UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JASSIM AL-MOHAMMEDI,                           13-CV-1020-RJA-MJR

                Plaintiff,                   REPORT AND
                                               RECOMMENDATION

     v.

THE CITY OF BUFFALO,
P.O. ANN VANYO,
P.O. HIBA KHALIL,
P.O. JAY REUTHER,
P.O. "KEATON SWAGGARD",
P.O. "JOHN" KEATON and
P.O. "JOHN" STEPHANY,

              Defendants.

## INTRODUCTION

This case has been referred to the undersigned pursuant to Section 636(b)(1)(A) and (B) of Title 28 of the United States Code, by the Honorable Richard J. Arcara, for the hearing and reporting of dispositive motions for consideration by the District Court.  Before the Court is defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Dkt. No. 25) . For the following reasons, it is recommended that defendants' motion for summary judgment be granted in its entirety.

## PROCEDURAL BACKGROUND

This lawsuit arises from a domestic dispute which took place on July 14, 2012 at 179 Military Road in Buffalo, New York and which culminated in the arrest of plaintiff Jassim Al-Mohammedi ("plaintiff").  Plaintiff filed a complaint against the City of Buffalo and six City of Buffalo police officers on October 7, 2013.  (Dkt. No. 1).  Plaintiff alleged the following: (1) assault and battery in violation of New York state law against the City of

Buffalo (the "City") and City of Buffalo Police Officer Ann Vanyo ("Officer Vanyo"); (2) excessive force in violation of Section 1983 of Title 42 of the United States Code ("Section 1983") against Officer Vanyo; (3) false arrest and imprisonment in violation of New York state law against the City, Officer Vanyo and City of Buffalo Police Officer Hiba Khalil ("Officer Khalil"); (4) false arrest and imprisonment in violation of Section 1983 against Officers Vanyo and Khalil; (5) malicious prosecution in violation of New York state law against the City and Officer Vanyo; (6) malicious prosecution in violation of Section 1983 against Officer Vanyo; and (7) failure to intervene in violation of Section 1983 against Officer Khalil.[1]   The City and Officers Vanyo and Khalil (collectively referred to as "defendants") filed an answer on January 23, 2014.  (Dkt. No. 4).

Following a period of discovery, which included three amendments to the Case Management Order to permit the parties additional time to complete discovery, defendants filed the instant motion for summary judgment on November 13, 2015.  (Dkt. No. 25). Plaintiff filed a response on December 11, 2015 (Dkt. Nos 28-30) and defendants replied on December 21, 2015 (Dkt. No. 32).  Oral argument was heard on January 19, 2016, at which time the Court considered the matter submitted.

## RELEVANT FACTS

On July 14, 2012, Eness Noary ("Noary") reported to the City of Buffalo police that plaintiff, her boyfriend, had been violent and had threatened her.[2]  (Dkt. No. 25-20, ¶1, ¶3).

---

[1]  Plaintiff's complaint also contained various allegations against City of Buffalo Police Officers Jay Reuther, Keaton Swaggard, John Keaton and John Stephany as well as a negligent hiring, training and retention claim against the City.  However, plaintiff has since withdrawn those claims.  (Dkt. No. 29, pg. 2)

[2]  The facts described herein are taken from the pleadings, motion papers and exhibits filed in this lawsuit.

Noary requested assistance in retrieving her and plaintiff's two young children as well as her property from their residence at 179 Military Road, Buffalo, New York. *Id*. Defendants state that Officer Vanyo was dispatched to respond to the call. (*Id*. at ¶1). Plaintiff states that Officer Khalil, a friend of Noary who was off-duty at the time of the incident, and Officer Vanyo, "coordinated" their arrival at the scene. (Dkt. No. 28, p. 3). Plaintiff did not interact with Officer Khalil in any manner during the course of the incident. (Dkt. No. 25-20, ¶33).

Defendants state that upon Officer Vanyo's arrival, plaintiff demanded that she speak with his attorney and began waiving his phone in her face. (Dkt. No. 25-20, ¶¶5-6). Defendants state that Officer Vanyo asked plaintiff to step back and he refused. *Id*. Defendants state that Officer Vanyo then witnessed plaintiff push Noary while Noary was holding their infant son and attempting to retrieve a car seat. (*Id*. at ¶10, ¶12). Defendants state that plaintiff almost struck their daughter with the car seat, who was holding Noary's hand at the time of the incident. *Id*. Officer Vanyo then arrested plaintiff. (*Id*. at ¶15, ¶16).

In contrast, plaintiff states that when Officer Vanyo arrived at the residence, he telephoned his attorney and attempted to have Officer Vanyo speak with his attorney. (Dkt. No. 28, p. 4). Plaintiff states that when Officer Vanyo refused, plaintiff began videotaping her with his cellular phone. (*Id*. at p. 5). Plaintiff states that Officer Vanyo attempted to take the phone from him, and then arrested him when he refused to relinquish the phone. (*Id*. at p. 8). Plaintiff acknowledges that there was physical contact between him and Noary while the children were present with Noary, however he alleges that Noary pushed him. (*Id*. at p. 7). Plaintiff states that in the course of the arrest, Officer Vanyo pushed him against a wall, forcibly handcuffed him, and bumped the back of his knee with her knee in

order to get him into the patrol car.  (*Id*. at p. 12).  Plaintiff also states that while Officer

Vanyo was arresting him, he continued in his attempts to videotape her.  (*Id*. at p. 12).

Following the arrest, Officer Vanyo completed a Use of Force form which indicated

that, during the course of the arrest, plaintiff refused to place his hands behind his back

and needed to be subdued.  (Dkt. No. 25-20, ¶17, Exh. L).  Plaintiff was charged with

obstructing governmental administration, resisting arrest, harassment in the second

degree, and acting in a manner injurious to a child.  (*Id*. at Exh. H).  Plaintiff did not suffer

any broken bones or other significant injuries as a result of the arrest.  (Dkt. No. 25-20,

¶32, ¶38, Exhs. M and N).  Plaintiff complained of bruising, was taken to Erie County

Medical Center, given ibuprofen and then returned to the Erie County Holding Center.  *Id*.

All of the criminal charges against plaintiff were later dismissed upon a motion by the Erie

County District Attorney.  (*Id*. at ¶39, ¶42; Dkt. No. 28 at p. 12, 14).  An internal

investigation was conducted and it was determined that Officer Vanyo acted in accordance

with departmental guidelines and that any allegations of excessive force were "not

sustained." (*Id*. at ¶44, ¶46).

## **DISCUSSION**

### *Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is to be granted

where "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  *See* Fed. R. Civ. P. 56.  A genuine issue of material fact

exists "where the evidence is such that a reasonable jury could decide in the non-movant's

favor." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008).  "[V]iewing the evidence

produced in the light most favorable to the nonmovant, if a rational trier [of fact] could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Bay v. Times Mirror Magazine, Inc.*, 936 F.2d 112, 116 (2d Cir. 1991); *see also Matsushia Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (summary judgment is appropriate when "the record as a whole could not lead a rational trier of fact to find for the non-moving party"). When a movant has met this burden, the burden shifts to the non-movant to bring forth evidence establishing the existence of an issue of material fact. *Linares v. McLaughlin*, 423 Fed. Appx. 84, 86 (2d Cir. 2011); *see also Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir. 2007) (an issue of fact is considered "material" if it "might affect the outcome of the suit under the governing law").

In evaluating a motion for summary judgment, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, and it is the burden of the moving party to demonstrate the absence of any material facts genuinely in dispute. *Hathaway v. Coughlin*, 841 F.2d 48, 50 (2d Cir. 1988). Importantly, a court must not "weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Victory v. Pataki*, 2016 U.S. App. LEXIS 1650 (2d Cir. 2016); *quoting Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995). However, a party cannot defeat a motion for summary judgment by relying upon conclusory statements or mere allegations. *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002).

*Admissibility of Certain Evidence in Support of Summary Judgment*

Plaintiff argues that a great deal of the evidence submitted by defendants in support of their summary judgment motion is inadmissible.  This includes, *inter alia*, police reports including arrest reports and booking forms, a domestic incident report with a supporting deposition from Noary, use of force forms, and the City's internal investigation of plaintiff's excessive force claim.  Plaintiff argues that the documents have not been authenticated and contain multiple layers of hearsay.

Local Rule 56(a)(3) states that, in a statement of undisputed facts in support of summary judgment, each statement must be followed by citation to evidence that would be admissible as required by Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure. Rule 56(c)(1)(A) indicates that a party citing to a fact must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials."  *See* Fed. R. Civ. P. 56(c)(1)(A).  In addition, Rule 56(c)(2) indicates that a party may object if the materials cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.  *See* Fed. R. Civ. P. 56(c)(2)*; Century Pacific, Inc. v. Hilton Hotels Corp*., 528 F. Supp. 2d 206, 215 (SDNY 2007) ("hearsay is admissible at the summary judgment stage if the contents would be admissible at trial").

Police reports, forms, and other similar documents kept in the ordinary course of police business are admissible either as business records or public records.  *See* Fed. R. Evid. 803(6) and Fed. R. Evid. 803(8).  However, statements of witnesses or complainants within those reports or forms are hearsay unless they fit into an independent exception to

the hearsay rule.  *See Parsons v. Honeywell, Inc.*, 929 F.2d 901, 908 (2d Cir. 1991) ("It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted but that statements made by third persons under no business duty to report may not.")   To that end, statements of witnesses contained in police reports are not inadmissible hearsay when they are not offered for the truth of the matter asserted but for the purpose of establishing whether the arresting officers had information giving them probable cause.  *Breeden v. City of New York*, 2014 U.S. Dist. LEXIS 4165 (EDNY 2014).  *See also United States v. Puzzo*, 928 F.2d 1356, 1365 (2d Cir. 1991) ("A statement is admissible non-hearsay when it is offered as evidence of the effect of a statement on the listener, the knowledge motivating his actions, or his state of mind at the relevant point in time.")

Here, the various police reports and forms submitted by defendants are admissible either as business records or public records.  As to plaintiff's assertions that the documents are not properly authenticated, there is no evidence to suggest that the documents are not what they purport to be and they have been submitted through a supporting affidavit of Corporation Counsel.  *See Breeden*, 2014 U.S. Dist. LEXIS 4165 (declaration of counsel for police department from which the reports came was based on personal knowledge and presented a reasonable likelihood that the documents were what they purported to be).

Thus, in evaluating the instant summary judgment motion, the Court may rely on the information set forth in the police reports and forms to the extent that it reflects the personal observations of the officer who completed that report or form.   However, statements by witnesses or complainants, such as Noary, may only be considered as to their effect on the listener or officer and not as to the truth of the matter stated.  Finally, the

Court notes that the vast majority of the evidence considered in evaluating this motion is the information contained in plaintiff's own deposition, which plaintiff does not contend is inadmissible.  (Dkt. No. 25-14).  To the extent that the Court has considered information from the police reports or other similar documents, that evidence has been considered in a manner consistent with the case law outlined above.

### Excessive Force and Assault and Battery

A plaintiff may bring a claim for excessive force used to make an arrest under Section 1983 pursuant to the provisions of the Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  In order to establish a violation of the Fourth Amendment through the use of excessive force, a plaintiff must demonstrate that the force used by a police officer was "objectively unreasonable" under Fourth Amendment standards and in light of the facts and circumstances surrounding the officer at the time of the incident. *Finnegan v. Fountain*, 915 F.2d 817 (2d Cir. 1990).  The reasonableness of the force is "judged from the perspective of a reasonable officer on the scene" and takes into account factors such as "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id*.   The Supreme Court has noted that the "reasonableness" of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 395; *see also Amnesty Am. v. Town of Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (holding that an officer effectuating an arrest may not use more force than reasonable under the circumstances to take the person into custody).  The Supreme Court has further recognized that a police officer's right to carry out an arrest, "necessarily carries

with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396 ("[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment").

Moreover, although a plaintiff does not have to suffer serious or significant injury to support an excessive force claim, the amount of force used must be more than *de minimis*. *United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999); *see also Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) ("a *de minimis* use of force will rarely suffice to state a constitutional claim"); *Washpon v. Parr*, 561 F. Supp.2d 394, 407 (SDNY 2008) (*de minimis* injury can serve as conclusive evidence that *de minimis* force was used).

Considering the facts in the light most favorable to plaintiff, the Court finds that not only were Officer Vanyo's actions on July 14, 2012 objectively reasonable under the circumstances but also that the amount of force used in arresting plaintiff was *de minimis* at best. It is undisputed that Noary had reported that plaintiff had been violent and had threatened her. It is also undisputed that minor children were present during the incident. While a number of details surrounding the reasons for the arrest are disputed, including whether it had to do with plaintiff's videotaping of Officer Vanyo, it is undisputed that Vanyo witnessed physical contact between plaintiff and Noary while Noary was holding a minor child and another minor child was standing nearby. It is also undisputed that plaintiff was not cooperating with Officer Vanyo. Indeed, plaintiff's Rule 56 statement indicates that he refused to put his phone down and was trying to walk away while Officer Vanyo was attempting to arrest him. In considering these facts and circumstances in a light most favorable to plaintiff, the Court finds that it was not objectively unreasonable for Officer Vanyo to use "some degree of physical coercion" in effectuating plaintiff's arrest.

Furthermore, the amount of force employed by Officer Vanyo was minor and benign. During his deposition, plaintiff testified that in the course of the arrest, Officer Vanyo pushed him against a wall, forcibly handcuffed him, and bumped his knee with her knee in order to force him into the back of the patrol car.  In *Robison v. Via*, the Second Circuit permitted a plaintiff's excessive force claim to survive a motion for summary judgment where there was evidence that, during the arrest, an officer pushed the plaintiff against the inside door of her car, yanked her out, threw her up against the fender and twisted her arm behind her back.  821 F.2d 913, 924-25 (2d. Cir. 1987).  Those facts are much different than the situation here where plaintiff alleges, at most, that Officer Vanyo pushed him, forcibly handcuffed him, and bumped his knee with her knee to place him in the patrol car.[3] *See e.g., Jimenez v. City of New York*, 2016 U.S. Dist. LEXIS 35998 (EDNY 2016) (summary judgment granted and plaintiff's excessive force claim dismissed where plaintiff was pushed to the ground and his head was restrained in the course of the arrest); *Bruno v. City of Schenectady*, 2016 U.S. Dist. LEXIS 32197 (NDNY 2016) (summary judgement granted in favor of defendants as to excessive force claim where the court was presented evidence that an officer raised plaintiff off the ground by her upper arms, "dragged" her toward the car, and "may have caused her to impact the police car with less force than necessary to either make a sound or result in injuries worth noting in medical records").  In light of the fact that plaintiff was not listening to Officer Vanyo and attempting to walk away during the arrest, Vanyo's actions do not appear to be in excess of what was needed

---

[3]  While plaintiff's complaint alleges that he was "thrown against a wall" and "kicked", his Rule 56 statement and deposition indicate that the incident involved Officer Vanyo pushing him against a wall, forcibly handcuffing him, and "bumping" his knee with her knee when placing him in the patrol car.

to handcuff plaintiff and place him in the police car.  Further, plaintiff's Rule 56 statement indicates that while Officer Vanyo was attempting to handcuff him, he was using his free hand to continue to videotape her and to throw his phone to another individual present at the scene.  Indeed, plaintiff's own statement indicates that he was resisting Vanyo's attempt to place him in handcuffs.  Such conduct necessarily justifies some use of force in securing the handcuffs on plaintiff, and cannot be considered unreasonable in light of the minor and undisputed amount of force employed.

The injuries claimed by plaintiff also support a finding that the force used was *de minimis* at best.  Plaintiff testified that he hit his forehead on the door of the patrol car when Officer Vanyo "bumped" his knee, but that this caused no injury or bleeding.  Plaintiff testified during his deposition that he had no bleeding or injuries at the time of the incident, and that nothing was broken or sprained.  The only "injury" plaintiff appears to allege is some lingering pain in his hand from the handcuffing.  However, these conclusory allegations are not supported by any other evidence in the record.  Indeed, plaintiff testified that no doctor has found there to be any injury to his hand and that he continues to work in the construction business.  *See Bermudez v. Waugh*, 2013 US Dist LEXIS 23422 (NDNY 2013) (tackling of an inmate that caused minor bruising constituted *de minimis* force); *Jackson v. City of New York*, 939 F. Supp. 2d 219, 231 (EDNY 2013) ("injuries held to be *de minimis* for purposes of defeating excessive force claims include short-term pain, swelling, and bruising and brief numbness from tight hand cuffing"); *Green v. City of Mt. Vernon*, 96 F. Supp. 3d 263 (SDNY 2015) (dismissing excessive force handcuffing claim, in part because plaintiff failed to allege that she suffered an injury as result of the handcuffing).

Furthermore, even if a Fourth Amendment violation had occurred, which it did not, Officer Vanyo's conduct during the course of the arrest is protected by qualified immunity. The doctrine of qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). Officials are entitled to qualified immunity when "their decision was reasonable even if mistaken" and "the doctrine gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal citations omitted).   In order to establish a defense of qualified immunity, a police officer must satisfy one of two tests: (1) that his or her conduct did not violate "clearly established rights" of which a reasonable person would have known; or (2) that it was "objectively reasonable to believe that his or her acts did not violate these clearly established rights." *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990).   A defendant is entitled to summary judgment on qualified immunity grounds when "no reasonable jury, looking at the evidence in the light most favorable to, the plaintiff, could conclude that it was objectively unreasonable for the defendant to believe that he [or she] was acting in a fashion that did not clearly violate an established federally protected right." *Robinson*, 821 F.2d at 921; *Thomas v. Roach*, 165 F.3d 137 (2d Cir. 1998) (the officers had qualified immunity only if it were objectively unreasonable for them to believe that their conduct did not violate the Fourth Amendment).

As explained above, the undisputed facts reveal that Officer Vanyo received information that plaintiff that had been violent with Noary and that, during the course of the incident, Vanyo witnessed physical contact between plaintiff and Noary. Two minor children

were present and, in fact, one was in the arms of Noary when the physical contact occurred. Further, plaintiff was not complying with Officer Vanyo's directives. In light of these circumstances, and taking into account the fact that the amount of force involved was very minor, the Court finds that it was not objectively unreasonable for Officer Vanyo to believe that the amount of force she employed in arresting plaintiff did not violate the Fourth Amendment. *See MacLeod v. Town of Brattleboro*, 2012 U.S. Dist. LEXIS 73481 (D. VT 2013) (noncompliance with police orders alone was sufficient to justify a show and use of some force). For these reasons, Officer Vanyo is entitled to qualified immunity with respect to plaintiff's claims of excessive force under Section 1983.

With respect to plaintiff's assault and battery claims, federal courts interpreting New York state assault and battery law as it applies to police officers have stated that the "essential elements of [§1983] excessive force and state law assault and battery are substantially identical." *Posr v. Doherty*, 944 F.2d 91, 94-95 (2d. Cir. 1991); *see also Pierre-Antoine v. City of New York*, 2006 U.S. Dist. LEXIS 28963 (SDNY 2006) ("[T]he test for whether a plaintiff can maintain a supplemental cause of action for assault and battery is the exact same test as the one used to analyze a Fourth Amendment claim.") Thus, for the reasons just stated, the Court finds that Officer Vanyo did not commit assault and battery in violation of New York state law. Moreover, because plaintiff's assault and battery claim against the City rests on a theory of respondent superior, the Court finds that the assault and battery claim as against the City should be dismissed as well. *See Karaduman v. Newsday,* 51 N.Y.2d 531 (1980) ("it is manifest that there can be no vicarious liability on the part of the employer if the employee himself is not liable"); *Wende C. V. United*

*Methodist Church*, 6 A.D. 3d 1047, 1052 (4th Dept. 2004) (finding that "there can be no imposition of vicarious liability in the absence of underlying liability").

### *False Arrest and Imprisonment*

A Section 1983 claim for false arrest derives from an individual's right to remain free from unreasonable seizures, including the right to be free from arrest absent probable cause. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either: (1) he or she had probable cause for the arrest; or (2) he or she is protected from liability because of qualified immunity. *See Simpson v. City of New York*, 793 F.3d 259 (2d Cir. 2015). An arresting officer has probable cause when the officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *See Weyant,* 101 F.3d at 852. When determining whether probable cause existed to support an arrest, courts are to "consider those facts available to the officer at the time of the arrest and immediately before it" and must render a decision based upon "the totality of the circumstances." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).

As explained previously, qualified immunity protects police officers from liability where either: "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his [or her] action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015). In the context of a false arrest claim, an officer's probable cause determination is "objectively reasonable" if there was "arguable probable cause for arrest." *Jenkins v. City of N.Y.*, 478 F.3d 76, 87 (2d Cir. 2007) "Arguable probable cause" exists "if either (a) it was objectively reasonable for the

officer to believe that probable cause existed; or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. New Haven*, 950 F.2d 864 (2d Cir. 1991). Importantly, courts in this Circuit have routinely held that in situations where an officer may have reasonably, but mistakenly, concluded that there was probable cause to arrest, that officer is entitled to qualified immunity from suit. *See e.g., Martinez v. Simonetti*, 202 F.3d 625, 206 (2d Cir. 2002) ("Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause...and in those situations the court will not hold that they have violated the Constitution."); *Lennon v. Miller,* 66 F.3d 416, 423 (2d Cir. 1995) (internal citations omitted) ("It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials...should not be held personally liable.").

Construing the facts in a light most favorable to plaintiff, Officers Vanyo and Khalil are entitled to qualified immunity as to the false arrest claim because there existed arguable probable cause to arrest plaintiff for, at a minimum, harassment in the second degree.[4] It is undisputed that it had been reported to Officer Vanyo that plaintiff had been violent with and had threatened Noary. While a number of the details regarding the nature of and reason for the noncompliance are in dispute, it is undisputed that plaintiff was not complying with Officer Vanyo's directives on July 14, 2012. It is undisputed that two minor children were present and, most importantly, it is undisputed that there was physical

---

[4] A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person, he or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same. *See* NY Penal Law §240.26(1).

contact between plaintiff and Noary while Noary was holding an infant child.  Officer Vanyo

maintains that she witnessed plaintiff push Noary, and there is no evidence in the record

that this statement was false or fabricated.  Given the prior report that plaintiff had been

violent, the volatile nature of the situation, the potential for escalating violence, and the

presence of the young children, it was objectively reasonable for Officer Vanyo to make a

quick decision to arrest plaintiff after observing the confrontation and concluding that

plaintiff pushed Noary.  Indeed, accepting as true plaintiff's allegation that it was in fact

Noary who pushed him, Officer Vanyo's mistaken belief as to who did the pushing does

not bar her and Officer Khalil from the protections of qualified immunity.  *See Lennon*, 66

F.3d at 421 ("In qualified immunity cases, we are not concerned with the correctness of the

defendants' conduct, but rather the objective reasonableness of their chosen course of

conduct given the circumstances confronting them at the scene."); *Bernard v. U.S.*, 25 F.3d

98, 102 (2d Cir. 1994) ("even if an officer is mistaken, and the arrestee did not commit the

crime, the officer will not be held liable if he acted reasonably and in good faith").

The elements of a false arrest claim under Section 1983 are substantially the same

as the elements of a false arrest claim under New York state law.  *See Weyant*, 101 F.3d

at 852; *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007) (Similar to a Section

1983 claim, under New York state law, an officer is not liable for false arrest "if, applying

the reasonable, prudent person test, the arresting officer, acting in good faith, had

reasonable cause for believing the person to be arrested to have a committed [a crime].")

Thus, for the reasons just stated, including the fact that arguable probable cause existed

to arrest plaintiff, the Court finds that Officers Vanyo and Khalil are not liable for false arrest

pursuant to New York state law.  Moreover, because plaintiff's claims of false arrest against

the City rest on a theory of respondent superior liability, the allegations against the City should be dismissed as well.

### *Malicious Prosecution*

In order to establish a claim for malicious prosecution under Section 1983, a plaintiff must demonstrate a violation of his or her rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law. *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010). The elements of a claim for malicious prosecution in New York are "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of a proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as motivation for defendant's actions." *Id*. Here, the record reflects that there was a criminal proceeding initiated against plaintiff and that the proceeding was terminated in plaintiff's favor. However, plaintiff's malicious prosecution claims under both Section 1983 and New York state law fail because, considering the facts in the light most favorable to plaintiff, it cannot be shown that Officer Vanyo initiated a criminal proceeding against plaintiff. Plaintiff's malicious prosecution claims also fail because there existed arguable probable cause to arrest him.

While police officers do not generally "commence or continue criminal proceedings, a claim for malicious prosecution can still be maintained if the officer is found to "play[] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Roham v. New York City Transit Authority*, 215 F.3d 208, 217 (2d Cir. 2000). This element may be satisfied by showing, *inter alia*, that the officer played an active role in the prosecution by doing things such as generating witness statements or staying in touch with the prosecutor regarding the case. *Bermudez v. City of New York*,

790 F.3d 368 (2d Cir. 2015).  Initiation or continuation of a proceeding may also be shown where an arresting officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, or withholds relevant and material information. *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999).

Here, there is no evidence in the record that Officer Vanyo played a role in the prosecution, generated false information which was passed along to the prosecutor, or withheld relevant and material information.  Indeed, there is no credible evidence that any of the information supplied by Officer Vanyo on the police reports was false, nor is there any affirmative evidence in the record indicating that Vanyo passed false information to the Erie County District Attorney and encouraged prosecution.  Even if plaintiff was videotaping Officer Vanyo at the time of the incident, there is no basis to conclude that this fact was relevant to plaintiff's arrest such that it needed to be included in the report or that Officer Vanyo's failure to include that information in the report was material.

Furthermore, the existence of probable cause or arguable probable cause is an absolute defense to malicious prosecution claims, whether asserted under Section 1983 or New York State law.  *Manganiello*, 612 F.3d at 161-62; *see also Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (a police officer is entitled to qualified immunity as to a malicious prosecution claim if he or she can demonstrate that there was at least arguable probable cause to arrest the plaintiff); *Keith v. City of New York*, 2016 U.S. App. LEXIS 4208 (2d Cir. 2016) (a finding that a police officer had arguable probable cause to arrest necessarily entitled the officers to qualified immunity on the arrestee's malicious prosecution claim).  For the reasons discussed in detail above, Officer Vanyo had arguable

probable cause to arrest plaintiff.  Therefore, she is entitled to qualified immunity with respect to his claim of malicious prosecution.  Moreover, because plaintiff's claims of malicious prosecution against the City rest on a theory of respondent superior liability based upon Officer Vanyo's actions, those claims should be dismissed as well.

### Failure to Intercede

Plaintiff alleges a claim of failure to intercede against Officer Khalil pursuant to Section 1983.  An officer who fails to intercede is liable for the preventable harm caused by other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by law enforcement.  *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988).  Importantly, "an underlying constitutional violation is an essential element of any failure to intercede claim."  *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 566 (SDNY 2010).  Because, as explained in detail above, there was no constitutional violation on the part of Officer Vanyo, plaintiff's failure to intercede claim against Officer Khalil should also be dismissed.

## **CONCLUSION**

For the foregoing reasons, it is recommended that defendants' motion for summary judgment (Dkt. No. 25) be granted in its entirety.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a),

and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72.  Any requests for an extension of this deadline must be made to Judge Arcara.

*Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*  See *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. See *Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R. Civ. P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."  *Failure to comply with these provisions may result in the District Court's refusal to consider the objection.*

SO ORDERED.

Dated:    March 23, 2016
          Buffalo, New York

                              /s/ Michael J. Roemer
                              HONORABLE MICHAEL J. ROEMER
                              United States Magistrate Judge