UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JASSIM AL-MOHAMMEDI,

                   Plaintiff,

   -vs-

CITY OF BUFFALO, P.O. ANN VANYO,
P.O. HIBA KHALIL, P.O. JAY REUTHER,
P.O. "KEATON SWAGGARD", P.O. "JOHN"
KEATON, P.O. "JOHN STEPHANY",

                Defendants.

**DECISION AND ORDER
No. 1:13-cv-01020(MAT)**

---

## I.  Introduction

This matter is before the Court upon the Report and Recommendation ("R&R") filed by Magistrate Judge Michael J. Roemer on March 23, 2016, recommending that the Motion for Summary Judgment filed by the City of Buffalo ("the City"), Buffalo Police Department ("BPD") Officer Ann Vanyo ("Officer Vanyo"),[1] and BPD Officer Hiba Khalil ("Officer Khalil") (collectively, "Defendants") be granted in its entirety. On April 12, 2016, Jassim Al-Mohammedi ("Plaintiff"), through his attorney, filed Rule 72(b) Objections to the Magistrate's March 23, 2012 [sic] Summary Judgment Report and Recommendation ("Obj.") (Dkt #36).  On April 29, 2016, Defendants filed a Response to Plaintiff's Rule 72(b) Objections ("Defs' Resp.").

---

[1]       During the pendency of this action, Officer Vanyo left the employ of the BPD.

For the reasons discussed below, the Court denies Plaintiff's Objections except to the limited extent as discussed in Section III.C, below. Nonetheless, as discussed further below, the Court agrees with R&R in all other respects and adopts the Magistrate Judge's recommendation to dismiss Plaintiff's Complaint in its entirety.

## II. Standard of Review

"In reviewing the R & R of a dispositive matter from a magistrate judge, the district court 'may adopt those portions of the Report to which no objections have been made and which are not facially erroneous.'" Nansaram v. City of N.Y., No. 12-CV-5038 NGG RLM, 2015 WL 5518270, at *2 (E.D.N.Y. Sept. 17, 2015) (quotation and citation omitted); see also FED. R. CIV. P. 72(b), Advisory Comm. Notes (when a party makes no objection, or only general objections to a portion of an R&R, the district judge reviews it for clear error or manifest injustice). An R&R is "clearly erroneous" when the court is, "upon review of the entire record, left with the definite and firm conviction that a mistake has been committed." United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006).

To preserve a claim for review by the district court, the party must make sufficiently specific objections to the R&R. E.g., Mario v. P & C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002). When, however, a party makes specific objections, the district judge must undertake a "de novo determination of those portions of

the report or specified proposed findings or recommendations to which objection is made[,]" 28 U.S.C. § 636(b)(1)(C), and "may . . . receive further evidence[.]" Id.; see also Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989) (discussing § 636(b)(1)(B)).

## III. Discussion

### A. Plaintiff's Objections Based on His Previous Arguments are Insufficient (Obj. ¶ 1)

Plaintiff states that he "repeats and maintains each and every argument and point of law as set forth in [his] underlying papers opposing [D]efendants' summary judgment motion, incorporated here by reference[.]" (Obj. ¶ 1). As the Second Circuit has explained, "[m]erely referring the court to previously filed papers or arguments does not constitute an adequate objection under either FED. R. CIV. P. 72(b)," Mario, 313 F.3d at 766 (footnote omitted), or under this District's Local Rules. The Court declines Plaintiff's to request re-examine the arguments he previously made to the Magistrate Judge in considering the summary judgment motion. See Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988) ("We hold categorically that an unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") (citation omitted).

**B.    The R&R's Allegedly Erroneous Characterization of the Incident as a "Domestic Dispute" (Obj. ¶ 6[2])**

Plaintiff asserts that the Magistrate Judge erroneously characterized the incident at issue in his Complaint as a "domestic dispute." (R&R at 1; Obj. ¶ 6). This objection, while specific, is baseless. Plaintiff asserts that on July 14, 2012, he was "arrested outside a building he owned by . . . [Officer] Vanyo and others, including off duty . . . [Officer] Khalil," who had "arrived at the home along with Plaintiff's wife, Eness Noairy,[3] who had just spent the night in jail after trashing the couple's apartment, and with Vanyo's assistance seized the couple's two children with no legal authority to do so." (Obj. ¶¶ 2, 6). Plaintiff admits that "Noary informed [Officer] Vanyo that she had gone to the house 'to get children and personal belongings[.]'" (Plaintiff's Rule 56 Counterstatement in Opposition to Defendants' Motion for Summary Judgment ("Pl's Counterstmt"), Resp. to #4).  These and other facts, as recited by Plaintiff in his Objections, show that the incident in question accurately was characterized as a "domestic dispute."[4]. Finally, Plaintiff's objection to the term "domestic

---

2

Paragraphs 2 through 5 of Plaintiff's Objections merely contain background information and do not assert actual objections.

3

The surname of Plaintiff's common-law wife is variously spelled in the record as "Noary", "Noairy," and "Noariy." When quoting directly from Plaintiff's pleadings, the Court will use the spelling utilized by Plaintiff. Otherwise, the Court will use the spelling utilized by the Magistrate Judge in the R&R, "Noary."

4    See, e.g., https://definitions.uslegal.com/d/domestic-dispute/ ("A domestic dispute is generally any quarrel, which may or may not include violence, within a family or between members of the same household.

dispute" is disingenuous given that Plaintiff's attorney used that same term in posing questions to Officer Vanyo during her deposition. (E.g., Deposition Transcript of Ann Vanyo ("Vanyo Tr.") at 15:5-11).

## C. Failure to Construe the Facts in the Light Most Favorable to Plaintiff (Obj'ns ¶¶ 6-7)

Plaintiff next objects that the Magistrate Judge "state[d] as a fact that Noary 'reported to the [BPD] that [Plaintiff] had been violent and had threatened her.'" (Obj. ¶ 7 (quoting R&R at 2)). According to Plaintiff, the Magistrate Judge's mention of the Noary's complaint to the BPD was a "misleading construction of the facts, and a failure to construe the admissible evidence in the light most favorable to [him][,]" (id.), because the police report filed by Noary only was completed after Plaintiff's arrest, and Noary "was not even present at the scene until she arrived with police officers[.]" (Id.).  The Court has reviewed the record as it stood at the time the R&R was issued, in conjunction with the deposition transcript of Officer Vanyo,[5] which was not before the Magistrate Judge.  The Court is compelled to conclude that the record does not establish that Officer Vanyo "undisputedly" was

Definitions are governed by local laws, which vary, and may also cover including any child or an adult or fully emancipated minor who is a spouse, former spouse, cohabitant, former cohabitant or person with whom a suspect has had a child or has or has had a dating or engagement relationship. It may or may not include criminal behavior.").

[5]

For reasons that are unclear to this Court, following the issuance of the R&R, Defendants filed—without objection from Plaintiff—the complete transcript of Officer Vanyo's deposition.

given information by Noary, prior to the arrest, about Plaintiff's alleged threats toward Noary. However, the record does indicate that Officer Vanyo was provided information, prior to the incident, that Plaintiff had been violent. Thus, while additional discussion of the record evidence is required, the Court ultimately agrees with the R&R's qualified immunity analysis regarding the false arrest claims, as discussed further _infra_.

The Court first turns to an examination of the record to assess the facts available to Officer Vanyo at the time of the arrest and immediately before it, _see_ Caldarola, 298 F.3d at 162. In support of their Motion for Summary Judgment, Defendants produced the Buffalo Police Complaint Summary Report (Dkt #25-2) regarding the "family dispute" at 179 Military Road to which Officer Vanyo and Officer Jay A. Reuther were dispatched on July 14, 2012. The dispatcher's notes regarding the originating call from the complainant read as follows:

> C/C IN BANK OF AMERICA LOT @ AUSTIN/MILITARY IN RED SUV . . . REQ[UESTED] ESCORT TO GET CHILDREN/PROPERTY FROM HOUSE, HUSBAND HAS BEEN VIOLENT.

(Dkt #25-2, p. 1 of 1) (capitals and ellipsis in original). Officer Vanyo was dispatched as the "Primary" officer at 8:20 p.m., and Officer Reuther was dispatched a few seconds later. (Id.; _see also_ Buffalo Police Dispatch Monitor-Unit History Report (Dkt #25-3, p. 1 of 6)). The record evidence thus supports the

R&R's finding that it had been reported to Officer Vanyo that Plaintiff had been violent.

However, the only documentary evidence submitted by Defendants regarding the alleged threats by Plaintiff to Noary is Noary's "Statement of Allegations/Supporting Deposition" signed in connection with Officer Vanyo's completion of the "NYS Domestic Incident Report" ("DIR") (Dkt #25-8). Under "Results of Investigation," Officer Vanyo stated,

> while resp[onding] to family dispute while attempting to speak w/ [Noary] [Plaintiff] ordered [Officer Vanyo] to speak to his attorney then started to put a black object in face of [Officer Vanyo]. [Plaintiff] did also push [Noary] almost knocking over daughter trying to get carseat away from mother.

(DIR (Dkt #25-8, p. 1 of 2)). In Noary's attached "Statement of Allegations/Supporting Deposition," she stated that Plaintiff "also . . . threatened [her] earlier today by phone saying he will get someone to throw gasoline in my face or pay someone $10,000 to kill [her] if [she] got near [their] house." (Dkt #25-8, p. 2 of 2). The space for indicating at what time the statement was made was left blank on the form Noary completed. On the DIR, under "Report", Officer Vanyo put the time at 8:10 p.m., and under "Occurred," she put the time at 8:20 p.m., which is while Officer Vanyo's car was still at the scene of the incident. (Dkt #25-2, p. 1 of 1). According to Officer Vanyo's deposition testimony, however, she took Noary's statement *after* the arrest, at either the BPD Delta District stationhouse or City Hall. (Vanyo Tr. at 32-33).

-7-

The Court has reviewed Officer Vanyo's deposition testimony to ascertain whether she had been provided information, prior to the arrest, that Plaintiff had threatened Noary. Officer Vanyo testified that while she was driving her patrol car, she was flagged down by Officer Khalil, who was accompanied by her (Khalil's) mother and Noary. (Vanyo Tr. at 10, 16-18). Because Noary, "the woman who wanted to make the complaint or get the car seat didn't speak English," Officer Khalil was translating for her. (Id. at 17). Asked if Officer Khalil explained why they had called 911, Officer Vanyo testified, "I believe [Noary] was trying to get the car seat for the child and some other personal belongings." (Id. at 20). There is no further questioning or testimony about what else Officer Khalil may have related to her. Officer Khalil asked Officer Vanyo if she had been dispatched; Officer Vanyo said she had not, and then "let radio know [she] was there [at the scene of the incident]. Radio let [her] know there was a pending call." (Id.). As noted above, the dispatcher's notes regarding the call state that "husband [i.e., Plaintiff] has been violent." (Dkt #25-2, p. 1 of 1). Thus, while Officer Vanyo's testimony does not reflect that she was told about Plaintiff's alleged threats toward Noary prior to the incident, it does support a finding that she had received information, from the dispatcher when she called in, that Plaintiff had been violent. The Court accepts in part, and rejects in part, the Objection in Paragraphs 6 and 7, regarding the construction of the facts available to Officer Vanyo at the time of

the incident and immediately before. The effect of this ruling on the probable cause analysis is discussed further _infra_ in Section III.G.

**D.    Failure to Draw Inference that Either Plaintiff is Lying or Officer Vanyo is Lying (Obj. ¶¶ 8-10)**

Plaintiff states that the R&R correctly identified a series of related factual disputes raised by the parties regarding the way events unfolded once Officers Vanyo and Khalil arrived at the scene, but then mistakenly explained them away as different people witnessing the same events but seeing them differently or recalling them differently after the passage of time. In particular, Plaintiff states, he was standing several paces away from Officer Vanyo, recording her with his cell phone; at first she did not see him, but when she did, she walked over, grabbed him, and demanded his phone. Plaintiff tossed his phone to his friend, whom Vanyo approached and threatened to arrest if the friend did not hand over the phone. The friend did so, and Officer Vanyo immediately placed Plaintiff under arrest. According to Plaintiff, if his version is correct, then Officer Vanyo would have remembered it; however, Plaintiff states, she "claims it did not happen."[6]    Plaintiff argues that "to the extent Officer Vanyo lied about the way events

---

[6]    The Court notes that Plaintiff's characterization of Officer Vanyo's position is somewhat misleading. At her deposition, Officer Vanyo was asked by Plaintiff's counsel if there "c[a]me a time when the plaintiff threw his phone to one of his friends who caught it[.]" (Vanyo Tr. at 36:10-2). Officer Vanyo did not categorically state this did not happen. Rather, she testified, "I don't know. Now, that you're saying it I kind of remember him throwing something, but I can't be certain. It was too long ago." (Id. at 36:13-15).

unfolded, she cannot enjoy qualified immunity." However, that is not a legally correct statement. Although this conflict in the parties' respective narratives regarding Plaintiff's arrest might prevent summary judgment on the merits of the false arrest claim, Officer Vanyo and Officer Khalil still would be entitled to qualified immunity if their actions objectively reasonable. See, e.g., Mesa v. City of N.Y., No. 09 Civ. 10464(JPO), 2013 WL 31002, at *19 (S.D.N.Y. Jan. 3, 2013) ("While the conflict in narratives regarding Mesa's arrest makes summary judgment on the merits of the excessive force claim inappropriate, both Dolan and Delvalle are entitled to qualified immunity, as their actions were objectively reasonable.").

**E. Failure to Recognize Significance of Factual Dispute Regarding the Alleged Shoving and the Phone (Obj. ¶¶ 11-12)**

Plaintiff asserts that the R&R minimizes the factual dispute between Officer Vanyo's statement that she saw Plaintiff shove Noary, and his deposition testimony that Noary shoved him. (Obj. ¶ 11). Plaintiff argues that this is "for a jury to decide." Likewise, Plaintiff complains that the R&R is erroneous insofar as it suggests that regardless of who shoved whom, Plaintiff "was not complying with Officer Vanyo's directives[,]" because it "makes a difference" what those directives were, an issue which the R&R failed to resolve. (Obj. ¶ 12 (citing R&R at 13) ("While a number of the details regarding the nature of and reason for the

noncompliance are in dispute, it is undisputed that [P]laintiff was not complying with Officer Vanyo's directives on July 14, 2012.")).

According to Officer Vanyo, when she informed Plaintiff they were there to get the children's car seat and Noary's personal belongings, he became "enraged", was "yelling and screaming", and telling her to "talk to [his] lawyer," and was "shoving his phone in [her] face[.]" (Vanyo Tr. at 22-23). Noary, who was then trying to remove the car seat from the car, was holding the "baby in her hands," when Plaintiff ran over and "pushed her" by pushing his "hands into her shoulder," and the "baby almost fell out of her hands." (Vanyo Tr. at 23, 24-25). Plaintiff does not dispute Defendants' statement in their submitted "Statement of Material Facts," that "Plaintiff acknowledges that physical contact was made between himself and Ms. Noary while she was holding Shadi, but claims that Ms. Noary pushed him." (Pl's Counterstmt, Resp. to #24).

However, for purposes of the probable cause and qualified immunity analyses, Plaintiff's arguments regarding the significance of these factual disputes fall wide of the mark. As the Second Circuit has observed, "probable cause is an assessment of probabilities, not an ascertainment of truths." Loria v. Gorman, 306 F.3d 1271, 1288-89 (2d Cir. 2002) (holding that district court erred in relying on factual dispute as to whether arrestee was present in house such that police officer investigating noise complaints could have heard him through door; issue was not

material for purposes of officer's summary judgment motion based on qualified immunity defense to arrestee's claims that officer maliciously filed warrant application that falsely indicated he had personal knowledge that arrestee was present at house when music audible beyond property line was being played there, since officer had relied on statements of neighbors and other officers to support his belief that arrestee was violating city anti-noise ordinance) (citations omitted); see also, e.g., Mesa, 2013 WL 31002, at *3-4, *12.

## F. Plaintiff's Claim that Defendants Did Not Move for Summary Judgment on the State Law Assault and Battery Claim (Obj. ¶ 13).

Plaintiff asserts that Defendants did not move for summary judgment as to his New York State law claim for assault and battery. (Pl's Obj. ¶ 13). Defendants counter by pointing to their Notice of Motion and supporting Declaration which sought "an Order of the Court granting Summary Judgment and/or dismissing all of Plaintiff's claims. . . ." (Defs' Resp. ¶ 20).

Plaintiffs further argue that the R&R erroneously recommended dismissing the assault and battery claim on the basis that Plaintiff suffered no injuries, and that some degree of force was inevitable since Plaintiff resisted arrest. (R&R at 12-13). Plaintiff contends that this was erroneous, since he denies having resisted arrest, and since the reasonableness of the degree of force utilized by Officer Vanyo is a jury question. (Pl's Obj. ¶ 13). The Court disagrees, as discussed further below.

With regard to a claim under Section 1983 for excessive force, and a claim under New York State law for assault and battery, the Second Circuit has held that "except for [42 U.S.C.] § 1983's requirement that the tort be committed under color of state law, the essential elements of the two claims . . . [are] substantially identical." Posr v. Doherty, 944 F.2d 91, 94-95 (2d Cir. 1991) (citing Raysor v. Port Auth. of N.Y. and N.J., 768 F.2d 34, 39 (2d Cir. 1985), cert. denied, 475 U.S. 1027 (1986)). The R&R discussed the excessive force claims and the assault and battery claims under the same heading (see R&R at 8-14), and specifically cited Posr (R&R at 13). The R&R noted that, according to Plaintiff's Rule 56 Statement of Facts and deposition, Officer Vanyo pushed him into a wall, forcibly handcuffed him, and "bumped" the back of his knee with her knee when placing him into the patrol car. Plaintiff testified that he hit his forehead on the door of the patrol car when Officer Vanyo "bumped" his knee, but he sustained no bleeding, sprains, or broken bones. He testified to lingering pain in his hand from the handcuffing procedure, though no doctor has found objective medical evidence of any injury. Plaintiff continues to work in the construction business.

The R&R first found that the force used by Officer Vanyo was "de minimis at best" and that the use of force was objectively reasonable under the circumstances, namely, that Plaintiff was using his free hand to record her with his phone and then to toss the phone to another individual present at the scene. (R&R at 11).

According to the R&R, such conduct justified "some use of force" in securing Plaintiff in handcuffs and "cannot be considered unreasonable in light of the minor and undisputed amount of force used." (Id.). The R&R then found that Oficer Vanyo was entitled to qualified immunity as to the excessive force claim, because it was not objectively unreasonable for Officer Vanyo to believe that the amount of force she employed did not violate Fourth Amendment standards. (Id. at 12-13) (citing MacLeod v. Town of Brattleboro, No. 5:10-CV-286, 2012 WL 1928656, at *7 & n. 5 (D. Vt. May 25, 2012) (arrestee's "noncompliance with police orders alone was sufficient to justify a show and use of some level of force"; there, officer's "use of the Taser constituted a de-escalation of force after both verbal commands and the threat of deadly force failed to produce the desired results"). The R&R proceeded to note that because the essential elements of excessive force under Section 1983 and assault and battery under New York State law are essentially the same. (R&R at 13). The R&R concluded, "for the reasons just stated . . . Officer Vanyo did not commit assault and battery in violation of New York state law." (Id.).

The Court finds no error in the R&R's thorough analysis of the merits of the excessive force claim, and the qualified immunity issue regarding this claim. Plaintiff's failure to challenge the R&R's finding regarding the Section 1983 excessive force claim fatally undermines his Objection to the R&R's finding regarding the

state law assault and battery claim since, as the R&R correctly observed, the same standard is used to evaluate both claims.

Furthermore, while qualified immunity "is not generally understood to protect officials from claims based on state law," a comparable state law doctrine "grant[s] government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without reasonable basis." Mangino v. Inc. Vill. of Patchogue, 814 F. Supp.2d 242, 250 n. 5 (E.D.N.Y. 2011) (quoting Jones v. Parmley, 465 F.3d 46, 63 (2d Cir. 2006); citation omitted). Since the Court agrees that Officer Vanyo is entitled to qualified immunity regarding the excessive force claim, summary judgment is similarly appropriate as to Plaintiff's state law assault and battery claim. See Jenkins v. City of N.Y., 478 F.3d 76, 87 (2d Cir. 2007) ("If the detective defendants were entitled to qualified immunity under federal law [as to the false arrest claim], summary judgment would be similarly appropriate on Jenkins' state law false arrest claim.").

## G.  Officer Vanyo Had Arguable Probable Cause to Arrest Plaintiff

As the R&R noted, a claim for false arrest "turns only on whether probable cause [or arguable probable cause] existed to arrest a defendant, meaning that "it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually involved by the arresting officer at the time of arrest." Jaegly v. Crouch, 439 F.3d 149, 154 (2d Cir. 2006). Stated another way, the relevant inquiry turns on "the

validity of the arrest," not the validity of each individual criminal charge. Id. As the R&R observed, "[w]hen determining whether probable cause exists courts must consider those facts *available to the officer* at the time of the arrest and immediately before it,'" Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (quoting Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002) (emphasis in original)), "as [p]robable cause does not require absolute certainty.'" Id. (quoting Boyd v. City of N.Y., 336 F.3d 72, 76 (2d Cir. 2003) (brackets in original)).

Here, Plaintiff was arrested based on four charges: Obstructing Governmental Administration in the Second Degree (New York Penal Law ("P.L.") § 195.05(1); Resisting Arrest (P.L. § 205.30); Harassment in the Second Degree (Physical Contact) (P.L. § 240.26(1); and Acting in a Manner Injurious to a Child (P.L. § 260.60(1)). In relevant part, the R&R summarized the circumstances surrounding the arrest as follows:

> It is undisputed that two minor children were present and, most importantly, it is undisputed that there was physical contact between [P]laintiff and Noary while Noary was holding an infant child. Officer Vanyo maintains that she witnessed [P]laintiff push Noary, and there is no evidence in the record that this statement was false or fabricated.[7] Given the prior report that

---

[7]
Rule 56 does not require or permit a court to determine whether a party or a witness is telling the truth. See, e.g., Taylor v. City of N.Y., No. 03 CV 6477(RLC), 2006 WL 1699606, at *7 (S.D.N.Y. June 21, 2006) ("While court may be inclined to trust the statements of one party and not the other, it is not the court's role to make such credibility assessments when determining a motion for summary judgment."). That said, a court may look at the presence of factors suggesting that a witness's statements are "not incredible[,]" Lee v. Sandberg, 136 F.3d 94, 104 (2d Cir. 1997).

> [P]laintiff had been violent, the volatile nature of the situation, the potential for escalating violence, and the presence of young children, it was objectively reasonable for Officer Vanyo to make a quick decision to arrest [P]laintiff after observing the confrontation and concluding that [P]laintiff pushed Noary.

(R&R at 15-16).

The situation into which Officers Vanyo and Khalil were drawn on the evening of July 14, 2012, unquestionably was a "domestic dispute" between Plaintiff and Noary. Recent decisions in § 1983 cases from this Circuit "reflect the recognition that domestic disputes are extremely combustible, and call upon police officers to make extraordinarily difficult judgments in pressurized situations." Mistretta v. Prokesch, 5 F. Supp.2d 128, 136 (E.D.N.Y. 1998). The "volatile nature of the situation" (R&R at 15-16) was apparent to the Court based upon its review of both Officer Vanyo's and Plaintiff's deposition testimony, even though their recollections differ on certain points.

Plaintiff agrees that, as the R&R noted, his and Noary's two young children were present at the time of his arrest. (E.g., Obj. ¶ 3). And, as discussed above, prior to arriving on the scene, Officer Vanyo had received information that Plaintiff had been violent toward Noary.

With regard to the issue of who shoved whom, Officer Vanyo's arrest report states in pertinent part that Plaintiff

-17-

> refused to comply with Officer [Vanyo's] order to step away, so [the officers] could talk with [Noary]. [Plaintiff] did push [Noary] while son in her arms and daughter holding her hand. Daughter was almost knocked over. [Plaintiff] was attempting to take car seat away from [Noary]. [Plaintiff] then refused to comply with officers to put his hands behind his back and had to be subdued.

(Police Report/Resist Arrest (Dkt #25-5, p. 1 of 1)). Plaintiff counters that it was Noary who pushed him, but he concedes that "physical contact was made between himself and Ms. Noary while she was holding Shadi," the younger child. (Pl's Counterstmt, Resp. to #24). Plaintiff further "acknowledge[d] that he put his hand on the car seat while Ms. Noary was attempting to retrieve it, stating that 'she pulled and [he] let go.'" (Pl's Counterstmt, Resp. to #25; see also Deposition Transcript of Jassim Al-Mohammedi ("Pl's Tr.") at 71). Thus, even in Plaintiff's version of events, possession of the child's car seat was an issue between him and Noary that night.

In Mesa, 2013 WL 31002, a § 1983 case asserting claims of, inter alia, false arrest, the district court was presented with a similar "who pushed whom" dispute—the parties disagreed about the nature and cause of certain physical contact between Mesa, a plaintiff-arrestee, and Dolan, one of the defendants-officers. While struggling with Dolan over a camera, Mesa claimed she was pushed into Dolan by an unknown bystander. Both Mesa and Dolan "agree[d] that Mesa made contact with Dolan, but there [was] a dispute as to whether Mesa was pushed into Dolan, or hit Dolan purposefully." Id. (citations to record omitted). Mesa was issued

a summons and charged with resisting arrest, harassment, and disorderly conduct. Id. at *4. The district court found that even assuming Mesa only "inadvertently stumbled into" the officer while "peacefully" leaving the scene as requested, under the other circumstances present, a reasonable officer would have believed she had probable cause to arrest Mesa for at least one of the misdemeanor charges. See id. at *12. The district court explained, "Given the forcible contact that Mesa made with Dolan's body—*inadvertent or not*—together with the altercation over the camera and the exchange of words between the two, it is beyond genuine dispute that a reasonable officer could have believed that probable cause existed to arrest Mesa for at least one of the misdemeanor offenses [of resisting arrest, harassment, or disorderly conduct]. . . ." Mesa, 2013 WL 31002, at *12 (emphasis supplied).

"'Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015) (quoting Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004)). The R&R concluded that, "[c]onstruing the facts in a light most favorable to [P]laintiff, Officers Vanyo and Khalil are entitled to qualified immunity as to the false arrest claim because there existed arguable probable cause to arrest [P]laintiff for, at a minimum, harassment in the

-19-

second degree." (R&R at 15 & n. 4). Harassment in the second degree is partially defined as "strik[ing], shov[ing], kick[ing] or otherwise subject[ing] . . . [an]other person to physical contact, or attempt[ing] or threaten[ing] to do the same. . . ." N.Y. PENAL LAW § 240.26(1). Even under Plaintiff's version of the facts, his arrest occurred subsequent to the time he made *some kind* of "physical contact"—inadvertent or deliberate—with Noary. These events occurred in the evening, in the context of a emotionally charged domestic dispute between Plaintiff and his estranged common-law wife over the custody of their children. Moreover, Officer Vanyo had received information via Noary that Plaintiff had been violent. "[L]ook[ing] to the information at the officers' disposal at the time of the incident," Mesa, 2013 WL 31002, at *12, the Court finds that it was objectively reasonable, under the circumstances, for Officer Vanyo to believe that probable cause, and, in the alternative, that officers of reasonable competence could disagree on whether the probable cause test was met as to the charge of second degree harassment.[8] Because the Court finds that there was arguable probable cause to arrest Plaintiff, Officer Vanyo, and by extension, Officer Khalil, are both entitled to qualified immunity concerning the Plaintiff's false arrest claim.

---

[8]

Although the R&R did not reach this issue, the Court finds that, on these facts, arguable probable cause existed for the charge based on P.L. § 260.10(1), which provides that a person endangers the welfare of a child when "[h]e knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old." Id. "The statute does not require proof . . . that a defendant directed the relevant conduct at the child." People v. Hitchcock, 98 N.Y.2d 586, 591 (2002) (citation omitted).

## IV. Conclusion

For the foregoing reasons, the Court denies Plaintiff's Objections except to the limited extent as discussed in Section III.C.  However, as also discussed above, this does not alter the Court's conclusion that the R&R's recommendations are correct. Accordingly, the Court adopts the R&R's recommendations in full. Specifically, Defendants' Motion for Summary Judgment is granted, and Plaintiff's Complaint is dismissed in its entirety.

**SO ORDERED.**

**S/Michael A. Telesca**

_____
        HON. MICHAEL A. TELESCA
        United States District Judge

Dated:      January 17, 2017
            Rochester, New York.